UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| HEIDI A. W., | ) |
| | ) |
|       *Plaintiff* | ) |
| | ) |
| v. | )  No. 1:19-cv-00359-NT |
| | ) |
| ANDREW M. SAUL, | ) |
| *Commissioner of Social Security,*[1] | ) |
| | ) |
|       *Defendant* | ) |

## ***REPORT AND RECOMMENDED DECISION***[2]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ failed to evaluate her migraine headaches properly, erred in assessing the opinion of treating neurologist Roople K. Unia, M.D., and built no logical bridge connecting her combination of impairments to her residual functional capacity ("RFC"). *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 11) at 2-19. I agree that the ALJ handling of the plaintiff's migraine headaches warrants remand and, accordingly, recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith. I need not and do not reach her remaining points of error.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had the severe impairments of migraines, pseudo-seizures, fibromyalgia, obesity, anxiety, depression, and post-traumatic stress disorder, Finding 2, Record at 15; that she had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except that she could occasionally kneel, crawl, or climb ramps or stairs, frequently stoop, balance, or crouch but never climb ladders, ropes, or scaffolds, was limited to occasional foot controls with her left upper extremity, needed a work environment with quiet and no exposure to cold, excessive vibration, moving machinery, or unprotected heights and no driving as part of her work duties, was limited to simple, unskilled work in a low-stress environment, with low stress defined as only occasional decision-making and occasional changes in the work setting, and could have no interaction with the public and only occasional interaction with coworkers and supervisors, Finding 5, *id*. at 18; that, considering her age (41 years old, defined as a younger individual, on the date her application was filed (October 4, 2016), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id*. at 23-24; and that she, therefore, had not been disabled from October 4, 2016, the date her application was filed, through November 14, 2018, the date of the decision, Finding 10, *id*. at 24-25. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health*

*& Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff complains, in the main, that the ALJ's RFC determination is unsupported by substantial evidence because he erroneously conflated her migraine and seizure impairments, discounting her reports of symptoms caused by both on the basis of a lack of objective medical evidence when the record citations on which he relied pertained solely to her seizure or "pseudo seizure" impairment.  *See* Statement of Errors at 5-8.  I agree.

The ALJ first stated, in relevant part:

> In terms of alleged migraine[] headaches and seizure disorder, the evidence of record fails to support a limitation to sedentary. Longitudinal physical examinations from primary care provider Paul G. Ronco, MD[,] and treating neurologist[] Roople K. Unia, MD, among other providers, show no issues with gait or upper or lower extremity function, but for a recent left knee surgery, secondary to osteoarthritis, which fails for duration (Ex. 12F/9/14/36/94, 23F1-7, 24 F/6, 28F).

Record at 19.  However, Exhibit 12F at 9 pertains solely to the plaintiff's seizure disorder, *see id.* at 967, Exhibit 12F at 14 merely lists three problems, seizure, chronic migraines, and fatigue, noting an unclear cause only as to the plaintiff's fatigue, *see id.* at 972, Exhibit 12F at 36 references

3

a normal EEG examination and "no seizure focus in MRI" in connection with the plaintiff's seizure-like episodes, separately noting that a worsening of her headaches could be due to poor sleep and stress, *see id*. at 994, Exhibit 12F at 94 notes "migraine headaches, *possible* seizures and memory problems[,]" *id*. at 1052 (emphasis added), Exhibit 23F at 1-7 does not indicate that normal findings on physical and neurological examination have any bearing on the plaintiff's migraine headaches, *see id*. at 1399-1405, Exhibit 24F at 6 addresses the plaintiff's reported neck/shoulder pain, *see id*. at 1412, and Exhibit 28F describes knee pain for which the plaintiff underwent a left knee arthroscopy, *see id*. at 1706-23.

>The ALJ next stated, in relevant part:

>In examining[] motor, bulk, tone and strength of the upper and lower extremities, Dr. Unia, at one point, had described, "some give way" but the doctor had indicated that, in general, upper and lower extremity findings were normal (Ex. 12F/36). In August 2017, Dr. Unia described slightly irregular rapidly alternating movements but cranial nerves were all intact and the [plaintiff] had demonstrated no rigidity (Ex. 23F/6/7). Moreover, the [plaintiff] was able to arise from a seated position without pushing off and her gait was with good heel strike and arm swing (Id). Seven months later, the [plaintiff] had indicated that alleged muscle twitching, right sided weakness and leg jerking were less of an issue and Dr. Unia had described full strength and sensation in the upper and lower extremities but for numbness in the fourth and fifth finger of the right hand (Ex. 23F/3). EMG and MRI of the cervical spine, according to Dr. Unia, were negative (Id). As such, notwithstanding allegations of migraines and seizure disorders and alleged associated symptoms, the clinical evidence fails to support a reduction to sedentary.

*Id*. at 19. However, as discussed above, Exhibit 12F at 36 references a normal EEG examination and "no seizure focus in MRI" in connection with the plaintiff's seizure-like episodes, separately noting that a worsening of her headaches could be due to poor sleep and stress, *see id*. at 994, and Exhibit 23F at 1-7 does not indicate that normal findings on physical and neurological examination have any bearing on the plaintiff's migraine headaches, *see id*. at 1399-1405.

>The ALJ finally stated, in relevant part:

4

> In her testimony, the [plaintiff] suggests that the alleged migraines and seizures would preclude her from functioning on a regular and continuing basis. Extensive workup, documented throughout the record, including MRI scans of the brain, electroencephalograms (EEG), a lumbar puncture and blood tests showed no "plausible biological mechanism" as the cause for the alleged conditions (Ex. 1F/16, 8F/17, 12F/30, 23F/7). Moreover, those findings led treating doctors such as neurologists Markos Poulopoulos, MD[,] and James Stevenson, MD[,] and current treating neurologist Roople K. Unia, MD[,] to conclude subconscious stress as the likely cause for the alleged migraines and "pseudo seizures" (Ex. 1F/16, 8F/17, 12F/30, 23F/7). As such, the inherently subjective nature of the allegations, as to the intensity, duration and frequency of the alleged migraines and pseudo-seizures, diminishes support for the allegations.

*Id.* at 19-20. While Dr. Poulopoulos stated in Exhibit 1F at 16 that he thought "the <u>multitude of symptoms are due to an underlying undiagnosed psychogenic etiology</u>[,]" *id.* at 359 (emphasis in original), he prefaced that hypothesis with the observation that the plaintiff had "chronic migraine disorder of course[,]" *id*. Similarly, while Dr. Stevenson noted in Exhibit 8F at 17 that he had discussed with the plaintiff the possibility of seeing a psychologist who "often treats people using biofeedback for stress reduction[,]" he diagnosed "[c]hronic migraine without aura, with intractable migraine[.]" *Id*. at 583. Nothing on page 30 of Exhibit 12F addresses the etiology of the plaintiff's ailments. *See id*. at 988. On page 7 of Exhibit 23F, Dr. Unia did describe "[m]ultiple neurologic symptoms without any clear organic cause in a 42-year-old woman who has undergone multiple imaging studies, EEGs and blood tests and who has exacerbation of symptoms with change in temperature." *Id*. at 1405. However, during that visit, the plaintiff complained of symptoms apart from those stemming from her migraines, stating that she "continue[d] to wonder why she has certain symptoms, such as weakness of her right side, twitching of her muscles and quivering of her cheek" and that "[h]er head will sometimes jerk to one side or her leg will jerk." *Id*. at 1403. These presumably were the complaints on which Dr. Unia focused.

The ALJ's findings that the clinical evidence failed to support a reduction from a light to sedentary exertional level and that the plaintiff's allegations of limitations from migraine

5

headaches were undercut by a lack of corroborating objective evidence, hence, are unsupported by substantial evidence.

The error is not harmless. After rejecting the opinions of three treating physicians, including Dr. Unia, the ALJ accorded only "partial weight" to the opinions of agency nonexamining consultants Donald Trumbull, M.D., and Jay Shaw, M.D., in crafting the plaintiff's RFC, explaining:

> The consultants assessed a medium [RFC]. Although [they] are reviewing expert sources, I gave maximum deference to the allegations of the [plaintiff] given the treatment history and combination of impairments. However, as noted above, the longitudinal evidence fails to support greater restrictions than a slightly reduced range of light.

*Id*. at 23; *see also id*. at 94-96 (Trumbull), 114-16 (Shaw). The ALJ could not have given "maximum deference" to the plaintiff's subjective allegations in view of his finding, unsupported by substantial evidence, that a lack of corroborating objective medical evidence undercut not only the plaintiff's claimed limitations stemming from her seizures or pseudo-seizures but also those stemming from her migraine headaches.

The commissioner protests that "[t]he fact that the ALJ gave partial credit to Plaintiff's testimony and reports to providers is not, contrary to Plaintiff's contention, a basis to assign error to his decision." Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 13) at 10 (quoting *Jeremy J.S. v. Berryhill*, No. 1:18-cv-00192-LEW, 2019 WL 2005795, at *5 (D. Me. May 7, 2019) (rec. dec., *aff'd* June 19, 2019), for the proposition that "'Plaintiff is not entitled to remand when the ALJ accepts the State agency opinions and goes even further by imposing greater limitations in the RFC assessment'"). Here, however, the ALJ did not merely accept the agency nonexamining consultants' opinions and go further by crediting some of the

6

plaintiff's testimony. He rejected the consultants' opinions in part and purported to, but could not have, given maximum deference to the plaintiff's allegations.

For the foregoing reasons, the ALJ's RFC is unsupported by substantial evidence. That, in turn, undermines his reliance on the testimony of a vocational expert to carry the commissioner's Step 5 burden of demonstrating that the plaintiff was capable of performing jobs existing in significant numbers in the national economy. *See* Record at 24; *Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record).

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 25th day of May, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge